NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0403n.06

No. 10-2222

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 13, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| DAVID KLEIN; ALL BROTHERS INVESTMENT, LLC, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | EASTERN DISTRICT OF MICHIGAN |
| CITY OF JACKSON, | ) ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN, COOK, and KETHLEDGE, Circuit Judges.

COOK, Circuit Judge. Defendant-Appellee the City of Jackson ("City") created the Jackson Administrative Hearings Bureau ("Hearings Bureau") to adjudicate violations of the City's blight ordinances. David Klein and All Brothers Investments, LLC, appeal the district court's dismissal of their challenge to that system, brought under 42 U.S.C. § 1983, which claimed that the Hearings Bureau violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. We affirm.

I.

Plaintiffs came within the Hearings Bureau's authority after a city official caught them renovating commercial property without the required building permits. The official cited All

Brothers for three permit violations, informed them of a hearing date before the Hearings Bureau, and ordered them to cease construction until they secured a permit. Plaintiffs do not deny that they violated the City's permit requirements; rather, they challenge the authority and neutrality of the Hearings Bureau that adjudicated their violations.

A Michigan statute and a city ordinance establish the Hearings Bureau's jurisdiction and frame its procedures. Michigan law permits cities to establish an "administrative hearings bureau" to adjudicate violations of city ordinances deemed "blight violations." Mich. Comp. Laws § 117.4q; *see also id.* §§ 117.4l, 117.4r. The same law prescribes the Bureau's hearing procedures, mandating procedural protections such as the right to appeal. *Id.* § 117.4q(17)-(19). To increase compliance and more efficiently adjudicate blight violations, the City created its own Hearings Bureau in 2005. *See* Jackson, Mich., Code of Ordinances pt. II, ch. 2.5 ("Jackson Ordinance"), art. I, § 2.5-1.

The Hearings Bureau's design is typical of similar administrative schemes. An "administrative hearing officer" heads the Hearings Bureau and determines liability. *Id.* art. II, §§ 2.5-11, -19. A city ordinance entitles respondents to a hearing before this officer, the choice to have legal counsel present, the ability to subpoena documents and witnesses, and the ability to present and cross-examine witnesses. *See id.*, art. II, § 2.5-19; *see also* Mich. Comp. Laws § 117.4q(14). The Hearings Bureau can assess only limited fines, and a respondent may appeal its decision. *See* Mich. Comp. Laws § 117.4q(3); Jackson Ordinance art. II, § 2.5-19(l)-(m), art. III, § 2.5-53.

All Brothers' experience with the Hearings Bureau ran an unusual course, largely because of its apparent unwillingness to participate in a hearing. After citing All Brothers for three permit violations in 2008, a city official notified it of a hearing date at which it could contest the violations. When All Brothers failed to appear at the hearing, the Hearings Bureau entered default judgment against the company and scheduled another hearing at which it could contest the default judgment. The day before the default-judgment hearing, All Brothers' attorney filed a notice of appearance and obtained an order setting aside the entry of default. All Brothers then went about procuring the necessary permits to continue work on its property.

All Brothers' adherence to the City's permit requirements was short lived. While waiting for approval of its building permits, All Brothers resumed construction. The Chief Building Official learned of All Brothers' renewed noncompliance and issued four new citations. The Hearings Bureau scheduled a third hearing for All Brothers, which now faced seven violations instead of three. The day before the hearing, counsel for All Brothers and Klein notified the Hearings Bureau that his clients had directed him not to attend the upcoming hearing. The hearing proceeded in All Brothers' absence, and the Hearings Bureau entered judgments against the company in the amount of $1,011.76 for the first three violations and $1,432.34 for the latter four.

After the time for appealing these judgments expired, the City sent several letters to All Brothers and Klein, All Brothers' organizer, seeking to collect the fines. The letters, addressed to All Brothers and directed to Klein's attention, advised (1) that the judgments had been recorded with

the Register of Deeds, creating liens against the property that All Brothers could remove by paying; (2) that the City could initiate contempt proceedings against Klein and All Brothers, which could result in up to 90 days' incarceration; and (3) that the City would send the judgments to a collections agency if All Brothers failed to respond by December 10, 2009.

On December 1, 2009, plaintiffs filed a complaint against the City raising two § 1983 claims alleging violations of the Due Process and Equal Protection Clauses. The City moved to dismiss the complaint or, in the alternative, to grant summary judgment, which the district court treated as a summary judgment motion. The district court granted the motion, dismissing both § 1983 claims with prejudice.

## II.

On appeal, plaintiffs renew their assertions that (1) the Hearings Bureau's procedures violate the Due Process Clause; (2) the City violated Klein's due process rights by threatening him with incarceration; and (3) the City arbitrarily and discriminatorily enforced its building code against All Brothers in violation of the Equal Protection Clause.

We review a grant of summary judgment de novo. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). We view the record in the light most favorable to the nonmoving party and affirm the grant of summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

*A. Due Process Claims*

Plaintiffs argue that the City violated their due process rights in two ways. First, they allege that the Hearings Bureau's bias toward the City violates due process. Second, they allege that the City denied Klein due process by threatening to incarcerate him for failing to comply with the Hearings Bureau's order, despite the fact that he was not a party to the proceeding before the Hearings Bureau. Both arguments fail.

We first address plaintiffs' argument that the partiality of the Hearings Bureau toward the City deprived them of due process. Plaintiffs fault the Hearings Bureau for "the failure to provide a neutral, authorized actual court, the failure to separate the executive administrative, and investigative functions with the judicial function, and the failure to provide a neutral judge to determine the proceedings, whose tenure and pay was not dependent on the levying of fines." Their legal argument on this point lacks precision, but plaintiffs' factual allegations amount to a claim that the Hearings Bureau's affiliation with the City causes it to favor the City in citation disputes by ruling in the City's favor and assessing large fines against respondents. On appeal, plaintiffs cite twenty-three aspects of the Hearings Bureau as evidence of its partiality. These include allegations that (1) the City funds the Hearings Bureau and pays its hearings officer with the fines that it imposes; (2) the Hearings Bureau is located within Jackson City Hall; (3) the City enjoys procedural advantages when appearing before the Hearings Bureau, such as the ability to remove cases and impunity for wrongly bringing cases; (4) the City selects the hearing officer and can only remove him

for cause; and (5) the Hearings Bureau does not charge the City a filing fee and has never fined the City for a violation.

At the threshold, we readily agree with plaintiffs that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). A trial in which the presiding judge has a strong interest in the outcome fails to satisfy this requirement, a principle illustrated by a set of Supreme Court cases involving "Mayor's Courts." *See, e.g.*, *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (holding that a mayor's court violated due process, largely on the ground that the judge held "a direct, personal, substantial pecuniary interest" in the costs that he received from convictions); *Ward v. Vill. of Monroeville*, 409 U.S. 57, 60 (1972) (holding that a mayor's court denied due process on the ground that the mayor's "executive responsibilities for village finances" created a "possible temptation" to convict defendants).

But the Hearings Bureau does not present the concerns raised in *Ward* and *Tumey*. Unlike the adjudicator's pay in *Tumey*, 273 U.S. at 520, the hearing officer's pay does not depend on assessing fines against respondents, nor does the City pay the officer a portion of the fines she imposes. Rather, those penalized by the Hearings Bureau pay fines to the City clerk, and the City pays hearing officers an hourly wage set by city ordinance. Jackson Ordinance art. II, §§ 2.5-28, -11; *id.*, ch. 2, art. III, § 2-424. Further, plaintiffs present no evidence to suggest that the City requires the hearing officer to meet a quota of fines or guilty verdicts to retain her position or salary level. The mayor, subject to the approval of the city council, appoints hearing officers for two-year terms,

and the City may remove hearing officers only for "reasonable cause." *Id*., ch. 2.5, art. II, § 2.5-11. Finally, unlike the mayor in *Ward*, the Hearings Bureau's hearing officer possesses no executive authority and faces no pressure to support the City's fisc by imposing fines. *See Ward*, 409 U.S. at 60; *Van Harken v. City of Chicago*, 103 F.3d 1346, 1353 (7th Cir. 1997) (distinguishing *Ward* on similar grounds).

Nor do the Hearings Bureau's procedures present the "extraordinary situation" in which an indirect stake in the outcome of a hearing compromises the hearing officer's neutrality. *See, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2259, 2263-65 (2009) (holding that due process requires recusal in the "extraordinary situation" that presents "serious risk of actual bias"). The remainder of plaintiffs' claims—for example, the location of the Hearings Bureau within Jackson City Hall, the fact that the hearing officer formerly worked alongside the City's prosecuting attorney, and the indirect pressure on the hearing officer to credit the testimony of the City's building inspectors with whom the hearing officer frequently interacts—fail to demonstrate a "serious risk of actual bias" sufficient to violate due process. *Id*. at 2259; *see also Tumey*, 273 U.S. at 523 (holding that "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion").

As part of their due process claim, plaintiffs also allege that state law bars the Hearings Bureau from adjudicating building-permit violations. We reject this argument as well. Nothing in the Due Process Clause prevents municipalities from adjudicating civil violations through

administrative schemes like the Hearings Bureau. *See, e.g.*, *Gardner v. City of Columbus, Ohio*, 841 F.2d 1272, 1278-79 (6th Cir. 1988) (rejecting a due process challenge to a similar city ordinance, which assigned the adjudication of parking infractions to an administrative body); *see also Van Harken*, 103 F.3d at 1350-51 (same). Moreover, the district court found that plaintiffs forfeited this argument, noting that they failed to include it in their complaint or develop the legal argument in their brief. We agree, and find that they also fail to develop a legal argument supporting their constitutional claim on appeal. We therefore deem it forfeited. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Last, we are unpersuaded by Klein's charge that the City denied him due process by threatening him with incarceration despite his status as a nonparty to the blight proceeding. As the district court correctly pointed out, Klein fails to allege that the City incarcerated him or otherwise deprived him of a "life, liberty, or property interest" protected by the Due Process Clause. *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010). Absent a showing of such a deprivation, this argument fails.

*B. Equal Protection Claim*

Plaintiffs' equal protection claim fares no better. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiffs allege that the City violated the Equal Protection Clause by

arbitrarily and discriminatorily enforcing the City's building code against them. While the typical equal-protection plaintiff alleges discrimination based on membership in a protected class, a plaintiff can proceed as a "class of one" by establishing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

A class-of-one claim requires two steps. First, a plaintiff must demonstrate disparate treatment. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 591-92 (6th Cir. 2011). Once a plaintiff shows disparate treatment, he must next demonstrate the lack of a rational basis for the challenged action. *See Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-711 (6th Cir. 2005).

We need not reach the second step of this analysis because, as the district court correctly found, plaintiffs fail to present evidence of disparate treatment. The whole of plaintiffs' evidentiary showing on this point consists of several photographs of disheveled-looking properties in Jackson—including a lot owned by the City—which plaintiffs contrast with a photograph of All Brothers' relatively neat property. This evidence might be convincing if plaintiffs challenged the City's enforcement of a restriction on storing waste or building materials, but the City issued the violations in this case for building without a permit and violating a stop-work order. None of the photographs depicts construction, let alone construction without a permit or in violation of a stop-

work order.  Because plaintiffs fail to present evidence upon which a reasonable jury could find for them, we affirm the district court's rejection of their equal protection claim.

III.

Accordingly, we **AFFIRM** the district court's dismissal of plaintiffs' claims.